[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Date of Sentence May 20, 1994
Date of Application May 27, 1994
Date Application Filed June 2, 1994
Date of Decision May 26, 1998
Application for review of sentence imposed by the Superior Court, Judicial District of Danbury.
Vicki H. Hutchinson, Esq., Defense Counsel, for Petitioner.
Patricia M. Gilbert, Esq., Assistant State's Attorney, for the State.
Sentence Affirmed.
BY THE DIVISION:
The petitioner was charged in a two part information. After a trial by jury in the first part he was convicted of the following:
Assault of an employee of the department of correction — § 53a-167C;
Unlawful restraint, 1st degree — § 53a-95
CT Page 7150
Attempted escape, 1st degree — § 53a-40 and § 53a-169;
Possession of a weapon or dangerous instrument in a correctional institution — § 53a-174a
Assault, 2nd degree — § 53a-60(a)(1).
The petitioner was thereafter tried by the jury on the second part of the information and was convicted of being a persistent serious felony offender — § 53a-40(b), therefore faced enhanced penalties for his convictions on the first part of the information. He was sentenced as follows:
Unlawful restraint, 1st degree 6 years
Attempted escape, 1st degree 12 years, consecutive
 Possession of a weapon/dangerous instrument in a correctional institution 25 years, consecutive
Assault, 2nd degree 7 years, consecutive
Assault on corrections officer 20 years, consecutive
The total effective sentence was 70 years, to run consecutively to any sentence presently being served.
The factual basis for the petitioner's convictions was reported in State v. Elliott, 39 Conn. App. 789 (1995). The facts are as follows:
In June, 1993, the defendant was incarcerated at the community correctional center in Newtown and assigned as an inmate to the delta housing unit, cell D-116. The delta unit consists of upper and lower tiers of cells for the inmates. Cell D-116 is located on the lower tier. The lower tier also contains a dayroom with a table and chairs, a control station, a multipurpose room and a recreation yard. The delta unit is capable of housing, a total of ninety-six inmates.
On June 5, 1993, at approximately 9 p. m., the inmates on the upper tier were out of their cells for recreation, while those on the lower tier, including the defendant, remained in their cells. Correction Officers Eric Williams and Sheri Privott were CT Page 7151 on duty as housing officers in the delta unit. At approximately 9:30 p. m., while Privott was engaged in a conversation outside of cell D-101 with the upper tier inmates, who were at recreation, Williams left to make a tour of the unit, leaving the control station unsupervised. At some point after Williams departed for his tour, but before he returned to the control station, someone opened the door of cell D-116, releasing the defendant.
When Williams completed his tour, he returned to the control station to record the unit tour in a logbook. At that time, the defendant approached Williams from behind, struck him over the head with a weight bar, and rendered him unconscious. The defendant then approached Privott, pushed her from behind into cell D-101 and locked the cell door. She then began to bang on the cell door, asking inmates to let her out. From the cell door window, Privott witnessed the defendant, wearing a clean prison uniform, pass cell D-101 holding prison keys and walk toward the recreation area. The defendant went into the recreation yard, removed a sewer manhole cover, and attempted to escape through the sewer. The pipe, however, was too small for the defendant to pass through and was filled with water.
Shortly thereafter, the defendant returned to open cell D-101 with the prison keys. Privott observed that the defendant's prison uniform was wet and dirty. The defendant began yelling at Privott, backing her up to a chair in the cell and telling her to sit down. Privott complied and the defendant again left, locking the cell door. At approximately 10:30 p. m., the defendant dragged Williams, who remained unconscious, to cell D-116 and once more returned to cell D-101. The defendant opened the door to cell D-101, grabbed Privott by the collar and forced her to go to the control station where he seized a clipboard.
At that point, the defendant forced Privott up the stairs toward the upper tier. The defendant then broke the clipboard over the staircase railing and held a piece of metal from the broken clipboard to her throat. The defendant shouted to the correction officers who had gathered in the sally port to retreat, threatening to kill Privott if they did not. All of the correction officers who had entered the unit at this time complied with the defendant's order.
Captain Dennis Shipman, however, remained in the sally port. The defendant stated to Shipman, "I tried to escape. I fucked up. " Thereafter, Lieutenant Sean Sullivan entered the sally port CT Page 7152 where the defendant was still holding Privott hostage, continuing to threaten her life with the piece of metal. The defendant opened the door to the delta unit and allowed Sullivan to enter the unit. He then told Sullivan that he had hit Williams over the head with the metal weight bar, locked Privott in a cell, and tried to escape through the sewer drain. While continuing to hold Privott, the defendant went with Sullivan to cell D-116 and gave up the cell keys. Sullivan unlocked the cell and assisted Williams, who was bleeding from the head, back to the sally port. Eventually, the defendant released Privott and surrendered. Williams suffered a concussion, and ear and scalp lacerations as a result of the assault.
Counsel for the petitioner argues that the sentence imposed is harsher than the maximum sentence for a non-capital murder offense. She posits that this sentence gives no hope to the petitioner and suggests that he has treatable emotional problems stemming from his own childhood abuse at the hands of his mother and her various male friends. He has been described as a hyperactive child with a history of acute temper tantrums.
In arguing that the sentence was appropriate the state's attorney points to the petitioner's record of violence, both in or out of penal institutions. The petitioner has indeed been institutionalized for a significant part of his life and, if his past history is any indication, he has shown himself incapable of conducting himself within the bounds of a civilized community. His record is replete with violence and includes the knife point abduction and rape of a female victim in approximately 1968; a 1970 conviction for aggravated assault and resisting arrest; and a conviction in 1971 for shooting his landlord and the landlord's wife resulting in the landlord being paralyzed from spinal cord injuries. During that incident, he reportedly took a woman and her children hostage. He had two separate escape from custody convictions, one in 1974 and one in 1975. He was convicted in 1975 of attempted murder (in Chicago, Ill.) for stabbing the victim in the stomach.
In 1981 he was convicted of assaulting a federal corrections officer. In 1986, he was convicted of having a weapon ("shank") in a correctional institution.
In 1991, in New Jersey, he was convicted of "terroristic threats" which involved holding a knife to the victims throat in an attempt to take her purse. CT Page 7153
In 1993 he was convicted of perjury for applying for Accelerated Rehabilitation under a false name when arrested for unlawful possession of a handgun.
He has also been convicted in 1993 of the federal crimes of possession of a firearm by a felon and being an armed career criminal. He received a 24 year sentence to run concurrently with his Connecticut sentences.
In addition his institutional record shows a continuing pattern of disciplinary tickets and assaultive, violent behavior toward both other inmates and correctional officers.
The sentencing court commented on the grave danger the two correction officers were in. Both suffered from post-traumatic stress syndrome and required psychiatric counseling. The effects of the assaults by the petitioner were severe and long-lasting.
Sentences longer than 60 years for crimes other than murder have been imposed where the circumstances, background of the defendant and the purposes for which a sentence is imposed warrant it. It is clear that, in this case, the primary purpose of the sentence was the protection of the public and the necessary isolation of the petitioner from the community. As a persistent serious felony offender, the petitioner faced maximum penalties of 85 years. Despite his terrible record, he received substantially less than the maximum he could have received.
Pursuant to Practice Book § 942, a sentence is modifiable if it is inappropriate or disproportionate in the light of the nature of the offense, the character of the offender, the protection of the public interest and the deterrent, rehabilitative, isolative and denunciatory purposes for which the sentence was intended.
Applying the provisions of Practice Book § 942 to the facts of this case, the Division concludes that the sentence is neither disproportionate nor inappropriate. It is affirmed.
Klaczak, J. O'Keefe, J. Norko, J.
Klaczak, Norko and O'Keefe, J.s, participated in this decision. CT Page 7154